IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

RONALD DAVIDSON, MARY DAVIDSON,
GREGORY DAVIDSON, and BILL BROWN,

    Plaintiffs,

v.                                                                                                                                                                 Civ. No. 05-0005 BB/ACT

ST. PAUL/TRAVELERS INSURANCE CO., JOHN
AND BARBARA BUNGAY, RIGHT WAY ROOFING,
INC., SABANA ROSE, INC., RUTH WEAVER, and
NORFOLK & WHEI CORP.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

       This matter is before the Court for consideration of a motion for summary judgment (Doc. 227) filed by Defendant Norfolk & Whei Corporation ("Defendant"). Having reviewed the submissions of the parties and the relevant law, the Court finds that Defendant's motion should be GRANTED insofar as it concerns Plaintiffs' claims against Defendant, and DENIED insofar as it concerns Defendant's counterclaims against Plaintiffs.

       This action arises out of a sub-lease entered into between Defendant, as sub-lessor, and Plaintiff Ronald Davidson d/b/a T & T Management ("Plaintiff"), as sub-lessee, on May 1, 2002. The sub-lease covered the basement portion of a warehouse owned by Defendants John and Barbara Bungay. In the mid-1990s, several years before the parties entered into the sub-lease, much of the warehouse had been destroyed by a fire. The warehouse was rebuilt after the fire, and the portion of the warehouse that had not been destroyed was incorporated into the newly-built structure. After the reconstruction, Defendant leased the basement portion of the warehouse from the Bungays and then, some time later, entered into the sub-lease with Plaintiff. Plaintiff used the basement portion to store a large number of collectibles such as posters, action figures, and CDs, which he and the other Plaintiffs intended to sell. On January 16, 2003,

Plaintiff entered into a sub-lease with a different tenant for a portion of the upper floor of the warehouse.[1]  None of the Plaintiffs experienced any problems with either sub-leased area until late April or early May 2004, after a hole was cut in the roof in order to install a skylight while, at the same time, Defendant Right Way Roofing was performing roofing work.  Plaintiffs allege that either the cutting of the skylight or vibrations caused by the roofing work, or both, caused soot and/or other burned material to fall from the ceiling and settle on their collectibles, damaging them.[2]  The claimed source of this soot and/or burned material was insulation that had been burned in the mid-1990s fire but had been left in place instead of being removed during the reconstruction of the warehouse.  Remnants of the burned insulation allegedly fell first onto the collectibles that were stored in the upper level of the warehouse, rather than the basement level that Plaintiff had sub-leased from Defendant.  Subsequently, however, when at least some of the collectibles were moved down to the basement, the soot and/or burned material spread to the other collectibles that were in the basement.  Plaintiffs maintain the soot and/or burned material is hazardous and it is impossible to safely clean the collectibles.

Plaintiffs filed suit against a number of Defendants.  Plaintiffs raised two specific claims against this particular Defendant:  first, a claim for fraud or misrepresentation, in that Defendant misrepresented the condition of the sub-leased premises in order to induce Plaintiff to enter into the contract; and second, a request for injunctive relief,  apparently in response to Defendant's assertion of a landlord's lien on the stored collectibles, to prevent Defendant from "taking any

---

[1]There is some controversy over whether Plaintiff Ronald Davidson is a party to this second sub-lease, or whether T & T Management is the sole sub-lessee.  However, it is not necessary to resolve that controversy in order to dispose of the motion currently under consideration.

[2]The Court recognizes there is also an issue, raised in a different Defendant's motion for summary judgment, as to whether the collectibles were owned only by Ronald Davidson or by other Plaintiffs as well.  Again, it is unnecessary to resolve that issue at this time.

action to disturb or otherwise inflict further damage upon the inventory and property...". In turn, Defendant has raised two counterclaims against all Plaintiffs: a claim for rent arrearages, because Plaintiff stopped making payments under the sub-lease after discovering the soot and/or burned material on the collectibles; and a claim for prima facie tort, alleging Plaintiffs have no factual or legal basis for their claims against Defendant. Defendant has moved for summary judgment on Plaintiffs' claims against Defendant, and on the counterclaims.

**Standard of Review**

Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Medina v. Income Support Div., 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith, 475 U.S. 574, 587-88 (1986). To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. Eck v. Parke, Davis & Co., 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing Hulsey v. K-Mart, Inc., 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. Matsushita, 475 U.S. at 587.

**Discussion**

**Fraud/Misrepresentation Claim:** Plaintiffs' claim for fraud or misrepresentation is a state-law claim brought under New Mexico law. In New Mexico the elements of such a claim are as follows: (1) a representation of fact was made which was not true; (2) either the falsity of the representation was known to the party making it or the representation was recklessly made; (3) the representation was made with the intent to deceive and to induce the party claiming fraud

3

to rely on the representation; and (4) the party claiming fraud did in fact rely on the representation. NMRA, Civ. UJI 13-1633. Each of these elements must be proved by clear and convincing evidence. *Id.* In this case, there are genuine issues of fact as to the first and fourth elements listed above. However, Plaintiffs have failed to introduce sufficient evidence to raise an issue of fact as to either the second or the third element.

Plaintiffs rely on evidence that Will Ferguson, who acted as Defendant's representative during the sub-leasing process, knew about the fire that had destroyed a large portion of the warehouse in the mid-1990's. [Unmarked Exh. 3 to Pltf. Resp. to N & W MSJ, Ferguson testimony in bankruptcy court, pp. 60-61]  Mr. Ferguson testified that he knew the roof of the southern portion of the warehouse had burned through, and that he thought, although he could not be positive, that the walls remained up. [*Id.*]  In addition, Plaintiffs point out that Ronald Davidson asked Ferguson, prior to entering into the sub-lease, if there were any problems with the warehouse space, and Ferguson said there were not. [Unmarked Exh. C to N & W MSJ, Davidson depo. pp. 22-23] Plaintiffs specifically rely on evidence that Ferguson did not tell Davidson there had been a major fire in the warehouse, and that Davidson would not have rented the space if he had known of the fire. [*Id.* p. 24]

The above evidence is not sufficient to raise an issue of fact as to whether Ferguson knowingly or recklessly misrepresented a fact to Plaintiff, and did so with the intent to induce Plaintiff to rely on the misrepresentation. While there is evidence that Ferguson knew there had been a major fire in the warehouse a number of years before he leased the basement from the Bungays and then sub-leased it to Plaintiff, there is no evidence at all to indicate that Ferguson knew the fire that had occurred years ago could still cause a problem in the warehouse. There is no evidence of any prior incidents of soot, ash, or other burned materials falling from the ceiling or walls of the warehouse. Defendant had leased the basement level for a year and a half before it was sub-leased to Plaintiff, and there is no evidence that there was any type of problem in the

basement level during that time. Furthermore, Plaintiffs stored their collectibles in the basement level without incident for approximately two years. Therefore, there is no evidence in the record that, when Ferguson told Plaintiff he was not aware of any problem with the warehouse, he was not telling the truth. Absent some evidence indicating Ferguson knew the prior fire had caused problems in the warehouse, or was likely to cause such problems in the future, the mere fact that he did not tell Plaintiff about the prior fire does not raise an issue of fact concerning the misrepresentation claim. Plaintiff did not ask Ferguson whether a major fire had occurred, or about the history of the warehouse generally; he asked Ferguson whether Ferguson had experienced any problems in the warehouse, and as noted above the only evidence presented to the Court indicates Ferguson answered truthfully. Summary judgment will therefore be granted on the fraud/misrepresentation claim.

**Claim for Injunctive Relief:** The parties' memoranda do not extensively discuss the injunctive-relief claim, but as noted briefly above it appears this claim arose out of Defendant's assertion of a landlord's lien over the collectibles that remained in the basement portion of the warehouse and were not removed, even though Plaintiff stopped paying the rent. Plaintiff's complaint indicates that Plaintiff wishes to preserve the status quo, remaining in possession of the premises despite the nonpayment of rent, in order to preserve evidence. The Court has reviewed the bankruptcy proceedings involving Plaintiff and the sub-leased premises, and it appears to the Court that the bankruptcy court has already decided this issue. The bankruptcy court lifted the stay applicable to the premises, and allowed the Bungays and Defendant to regain possession of those premises. The bankruptcy court also determined that Plaintiff had been constructively evicted from the premises and that "rent was abated" on the basement premises "from before the bankruptcy was filed through the date the automatic stay was terminated and, presumably, Debtor left the premises..." [*See* Doc. 174, Bankruptcy Case 04-18262, opinion issued August 11, 2006]. Thus, the bankruptcy court has already required Plaintiff to vacate the

5

premises, and has in effect removed the basis for any landlord's lien Defendant might have asserted over the collectibles.  The issue of injunctive relief thus appears to be moot and summary judgment will therefore be granted on that claim for relief.  Should the Court's understanding of the bankruptcy proceedings be inaccurate or incomplete, the parties should inform the Court immediately.

**Counterclaim for Rent Arrearages:**  Defendant filed a counterclaim for rents owed, because as noted above Plaintiff stopped paying rent after the soot-and-burned-material incident.  Again, the bankruptcy court appears to have decided this issue by determining that the rent was abated from "before the bankruptcy was filed" to the date the automatic stay was terminated, due to a constructive eviction.  In addition, the bankruptcy court subsequently sustained Plaintiff's objection to an amended proof of claim filed by Defendant, which was apparently an attempt to revive the claim for the rent that had not been paid by Plaintiff.  [*See* Doc. 248, minutes of hearing, case 04-BR-18262].[3]  The Court will therefore deny Defendant's motion for summary judgment on this counterclaim.

**Counterclaim for Prima Facie Tort:**  Defendant cited not a single case in support of its motion for summary judgment on the counterclaim for prima facie tort.  The one paragraph of discussion contained in Defendant's brief argues that Plaintiffs have been dilatory in responding to discovery and asserts, in conclusory fashion, that Plaintiffs had no valid reason for filing suit against Defendant.  This appears to indicate that Defendant's counterclaim actually is a claim for malicious abuse of process, rather than prima facie tort.  In any event, the Court will not perform

---

[3]The Court has not researched the issue of whether the bankruptcy court's decisions have the effect of discharging Plaintiff's rent obligation, which would render immaterial the question of whether the rent arrearages are owed or not.  Again, if any party believes the Court has misapprehended the import of the bankruptcy court's actions, the Court should be informed of that belief.

6

Defendant's legal research, nor will it search the record to determine the basis for Defendant's counterclaim.  Summary judgment will be denied on the counterclaim.

**Conclusion:** Based on the foregoing, summary judgment will be granted as to Plaintiffs' claims against Defendant, but denied as to Defendant's counterclaims against Plaintiffs.

## ORDER

A Memorandum Opinion having been entered this date, it is hereby ORDERED that the motion for summary judgment filed by Defendant Norfolk and Whei, LLC (Doc. 227), be, and hereby is, GRANTED in part and DENIED in part.

                                                 _____
                                                 BRUCE D. BLACK
                                                 UNITED STATES DISTRICT JUDGE