IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

RONALD DAVIDSON, MARY DAVIDSON,
GREGORY DAVIDSON and BILL BROWN,

    Plaintiffs,

v.                                                                                        Civ. No. 05-0005 BB/ACT

ST. PAUL/TRAVELERS INSURANCE CO., JOHN
AND BARBARA BUNGAY, RIGHT WAY ROOFING,
INC., SABANA ROSE, INC., RUTH WEAVER,
WILLIAM S. FERGUSON, and NORFOLK & WHEI
CORP.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

       This matter is before the Court on Defendant St. Paul/Travelers' ("Travelers") motion for summary judgment (Doc. 149), as well as Plaintiffs' motion for partial summary judgment against Travelers (Doc. 225). Having reviewed the submissions of the parties and the relevant law, the Court finds that both motions should be denied.

       On or about May 2002 and January 2003, Plaintiff Ronald Davidson ("Plaintiff Davidson") entered into sub-leases for two areas of a warehouse owned by Defendants John and Barbara Bungay. Plaintiff Davidson, either individually or in conjunction with the other Plaintiffs, owns a number of collectible items, and used the leased space at the warehouse to store these items. Plaintiff Davidson, and other named Plaintiffs in this case (including Davidson's wife, Mary Davidson, their son, Greg Davidson, and a family friend, Bill Brown), entered into an insurance contract with Travelers to protect the items in the warehouse against certain losses. Plaintiffs allege these insured items were irreparably damaged when two other Defendants, John

Bungay and Right Way Roofing, installed a skylight in the roof of the warehouse and placed new roofing material on the warehouse. According to Plaintiffs this work on the roof caused soot and other burnt material to fall on their collectibles, and the collectibles cannot be cleaned to useable condition. The soot and other burnt material allegedly was created by a prior fire at the warehouse, which occurred in the mid-1990s. The warehouse was rebuilt after the fire, and the portion of the warehouse that had not been destroyed was incorporated into the newly-built structure. Plaintiffs claim that burnt insulation remained in the original portions of the warehouse, and that the work on the roof knocked loose soot and other small particles of the burnt insulation and caused it to fall.

Plaintiffs filed an insurance claim based on these events, and Travelers denied the claim. Plaintiffs sued Travelers as well as a number of other Defendants, claiming that Travelers is contractually bound to pay for the losses and alleging bad faith on the part of Travelers. Travelers then filed a motion for summary judgment, making the following arguments: (1) only Ronald Davidson has an insurable interest in the collectibles; (2) the policy contains exclusions that prevent Travelers from being liable for Plaintiffs' losses; and (3) there is insufficient evidence to support a bad faith claim against Travelers. Plaintiffs responded by filing their own motion for partial summary judgment, arguing there is no factual dispute as to Travelers' liability for the loss or as to the company's bad faith in handling Plaintiffs' claim.

**STANDARD OF REVIEW**

Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.'" *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986).

To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

**DISCUSSION**

**Insurable Interest:** Travelers argues that Plaintiff Davidson is the only party who had an insurable interest in the collectibles, and that the other Plaintiffs' claims against Travelers must be dismissed. Travelers relies on testimony given by Plaintiff Davidson at his depositions. During the depositions Plaintiff Davidson insisted several times that he was the sole legal owner of the collectibles stored in the warehouse. [R. Davidson depo. pp. 13-14, 33, 55-56, 58-59, 78, 103-04] According to Travelers, this testimony establishes that Plaintiff Davidson is the only person who had an insurable interest in the collectibles.

The Court finds there are genuine issues of material fact as to whether Plaintiff Davidson should be considered the sole legal owner of the collectibles. First, as Travelers acknowledges, Plaintiff Davidson's wife, Mary Davidson, may have a community-property interest in at least some of the collectibles. Plaintiff Davidson specifically acknowledged this in his deposition, when

he stated that Mary did not own any of the goods separately, and added "Just what she might be entitled to as my wife." [*Id.* p. 71]  In addition, even though Plaintiff Davidson made a number of statements indicating he was the sole owner of the collectibles, he also made statements to the effect that he, Greg, and Bill own the property jointly, with each having a one-third ownership interest.  [*Id.* pp. 71, 125]  Thus, even based on Plaintiff Davidson's deposition testimony alone, there is a factual conflict concerning the ownership status of the insured property.  Given that situation, it is not proper to grant summary judgment on the insurable-interest issue.

**Exclusion for "Contamination":**  The parties agree the insurance policy in question is an "all risk" policy.  This means the insurance provided by the policy covers all accidental losses not resulting from misconduct or fraud, unless there is a specific provision in the policy excluding the particular loss in question.  *See Winters v. Charter Oak Fire Ins. Co.*, 4 F.Supp.2d 1288, 1291 (D.N.M. 1998).  The burden is on the insurer to show that the loss comes within an exclusion contained in the policy, and the exclusion must be clearly expressed in the policy.  *See id.*  Exclusions from coverage are construed narrowly against the insurer.  *See id.*  New Mexico law controls the interpretation of the policy at issue in this case.  *Cf. id.*

Travelers first points to an exclusion in the policy stating, "We will not pay for loss or damage caused by or resulting from...(8) Contamination."  [Complaint, Exh. D, pp. 16-17]  The term "contamination" is not defined in the policy, but Travelers relies on cases that have construed the term to mean either "the introduction of a foreign substance that injures the usefulness of the object" or "a condition of impurity resulting from the mixture or contact with a foreign substance."  *See Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 39 (2d Cir. 2006) (noting definitions used in some cases and adopted in the district

court decision under review).  Travelers argues it is undisputed that a foreign substance came into contact with Plaintiffs' collectibles, injuring their usefulness and causing a condition of impurity, and therefore the contamination exclusion applies to the facts of this case.  However, as the *Parks* opinion points out, a number of courts (including the *Parks* court itself) have rejected the definitions quoted above, because they "would allow the contamination exclusion in the Policy to be applied in a limitless variety of situations."  *Id.*, 472 F.3d at 45.  The *Parks* court accordingly found the contamination exclusion to be ambiguous.  *Id.*

It is this Court's task to predict whether the New Mexico Supreme Court would determine that the contamination exclusion applies in a situation where soot or other burned material falls onto property, does not mix with it to create a different substance, but does at minimum create a situation in which the property must be cleaned to be useful.  Just interpreting the word "contamination" standing alone, the Court finds the New Mexico Supreme Court would not do so.  *See Computer Corner, Inc. v. Fireman's Fund Ins. Co.*, 46 P.3d 1264, 1267 (N.M. App. 2002) ("If we are alerted to an interpretation supporting coverage to which the language of the policy is reasonably susceptible and which does not violate public policy, we generally will construe the provision against the insurer and in favor of coverage.").  An argument can be made that "contamination" does not merely require deleterious contact with a foreign substance, but an actual mixing of that substance with the property at issue.  *See McConnell Constr. Co. v. Ins. Co. of St. Louis*, 428 S.W.2d 659, 661 (Tex. 1968) (connotation of contamination, in builder's risk policy, is a mixing of substances like dirt and water, resulting in an impure mixture). Furthermore, the *Parks* case involved facts similar to this case, with dust settling on property and injuring it, and an all-risks policy similar to this one; *Parks* determined the contamination

exclusion in the policy did not unambiguously apply to such a situation. 472 F.3d at 47-48. The New Mexico appellate courts have a long history of ensuring that insured parties receive the coverage they have paid for, and of narrowly construing exclusions and requiring insurers to clearly state such exclusions in order to have them enforced. *See, e.g., Boradiansky v. State Farm Mutual Auto. Ins. Co.*, ___ P.3d ___, 2007 WL 1192046 (N.M.) (construing uninsured motorists statute in favor of insured); *Computer Corner, supra*; *Rummel v. Lexington Ins. Co.*, 945 P.2d 970, 982 (N.M. 1997) (rules of contract construction are especially narrow when applied to the exclusionary provisions of insurance policies). The Court therefore predicts the New Mexico Supreme Court would find the term "contamination" to be ambiguous on its face as applied to the facts of this case. Further development of the facts is thus necessary to determine whether under New Mexico law the contamination exclusion should apply, and summary judgment is not appropriate on that issue.[1] *See Parks, supra* (reversing summary judgment granted to insurer on "contamination" issue).

**Exclusion for Discharge of Pollutants:** Travelers next relies on the following exclusion in the policy, stating that Travelers will not pay for loss or damage caused by or resulting from "Discharge, dispersal, seepage, migration, release or escape of 'pollutants' unless the release, discharge or dispersal is itself caused by any of the 'specified causes of loss'." [Complaint, Exh. D, p. 17] Unlike the contamination exclusion, the policy does define the term "pollutants," as follows: "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, [and] fumes ..." [*Id.* p. 27] Travelers points out that the burned material that fell onto

---

[1] Facts that might be relevant include, but are not limited to, "extrinsic evidence such as the premiums paid for insurance coverage, the circumstances surrounding the agreement, the conduct of the parties, and oral expressions of the parties' intentions." *Rummel, supra*, 945 P.2d at 977.

6

Plaintiffs' property was soot, which is specifically designated a "pollutant" under the policy. Travelers also argues that the soot was released, dispersed or discharged onto Plaintiffs' property, and that the pollution exclusion, read literally, applies to preclude coverage.

It is clear that "soot" is a pollutant under the policy, as it is specifically named as such. The Court will also assume, for purposes of this argument, that the burned material falling onto Plaintiffs' collectibles should be considered "soot." A reading of the cases discussing this pollution exclusion, however, reveals a substantial split of authority as to whether an incident of the type that occurred in this case constitutes the discharge, dispersal, release or escape of a pollutant.

Some courts accept the literal view espoused by Travelers; they hold that any time, and in virtually whatever manner, a pollutant manages to move from a contained location to a location where it comes in contact with a person or property, the pollution exclusion's requirement of discharge, dispersal, etc. has been met. *See, e.g., Bituminous Cas. Corp. v. Sand Livestock Systems, Inc.*, 728 N.W.2d 216, 222 (Iowa 2007) (emission of carbon monoxide from a propane heater located in a washroom fell within pollution exclusion of liability insurance policy); *Peace ex rel. Lerner v. Northwestern Nat. Ins. Co.,* 596 N.W.2d 429, 440 (Wis. 1999) (child's ingestion of paint chips and paint dust containing lead, in an apartment, constituted "pollution" under exclusion in liability policy); *American States Ins. Co. v. Zippro Const. Co.*, 455 S.E.2d 133, 135 (Ga. App. 1995) (asbestos fibers in kitchen flooring became airborne as result of removal, scraping, and sanding of floor; pollution exclusion in liability policy applied to preclude coverage).

On the other hand, many courts reject this literal view and apply what they term a "contextual" approach, examining the history of the pollution exclusion and limiting that exclusion

to the traditional understanding of pollution caused by industrial activity. *See MacKinnon v. Truck Ins. Exchange*, 73 P.3d 1205, 1208-09, fn. 2 (Cal. 2003) (listing cases representing each position, and characterizing the "narrower" industrial-pollution interpretation of the exclusion as the majority position). These opinions all point out that the pollution exclusion was adopted by the insurance industry in response to the enormous exposure created by federal environmental laws, beginning in the early 1970s with the Clean Air Act amendments, and with environmental disasters such as the Love Canal situation. *Id.* at 1209-10; *see also, e.g., American States Ins. Co. v. Koloms*, 687 N.E.2d 72, 79-81 (Ill. 1997); *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679, 681-82 (Ky. App. 1996). The essence of these holdings is that the general understanding of an ordinary insured would be that "pollution" or "pollutants" are dangerous substances produced during industrial activity and capable of causing environmental harm, not substances created or released as a result of negligent actions around the home or business of the insured.[2] Several of these courts that limit the pollution exclusion to situations involving industrial-type pollution rely on the assertion that the terms discharge, dispersal, escape, and

---

[2]*See Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 889 A.2d 387, 394-95 (Md. 2006) (pollution exclusion was ambiguous if applied to claim arising from welding fumes containing dangerous amounts of manganese); *MacKinnon, supra*, 73 P.3d at 1218 (interpreting pollution exclusion in favor of coverage, where landlord negligently sprayed pesticide around property); *Kent Farms, Inc. v. Zurich Ins. Co.,* 998 P.2d 292, 295-96 (Wash. 2000) (pollution exclusion did not apply where driver of truck was sprayed with diesel fuel; exclusion limited to environmental harms); *Koloms, supra,* 687 N.E.2d at 82 (carbon monoxide leak from apartment furnace not excluded); *Motorists Mut.*, *supra*, 926 S.W.2d at 682 (pollution exclusion ambiguous as applied to a leak in a vent pipe that caused carbon monoxide to contaminate neighboring business); *Stoney Run Co. v. Prudential-LMI Commercial Ins. Co.*, 47 F.3d 34, 37-38 (2d Cir. 1995) (applying New York law, construing pollution exclusion to apply to environmental pollution, rather than carbon monoxide leak in apartment); *Regional Bank of Colorado, N.A. v. St. Paul Fire & Marine Ins. Co.,* 35 F.3d 494, 498 (10th Cir. 1994) (Tenth Circuit, applying Colorado law, held that pollution exclusion did not apply to emission of carbon monoxide from residential heater that malfunctioned).

release are almost "terms of art" in the field of environmental law, applying most often to incidents of large-scale environmental contamination.[3]  Others have held that the mere fact that so many courts disagree about the meaning of the pollution exclusion renders the exclusion ambiguous when insurers attempt to apply it outside the context of industrial activity.  *See Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1183 (6th Cir. 1999) (disarray in the law in this area used as one justification for holding pollution exclusion ambiguous); *Motorists Mut.*, *supra* (same).  Many of the opinions also discuss the fact that if the pollution exclusion is applied to acts of ordinary negligence that happen to involve contaminants, irritants or other pollutants, the exclusion will have much broader impact than a reasonable insured would expect.  *See MacKinnon*, 73 P.3d at 1217; *cf. Regional Bank*, *supra*, 35 F.3d at 498 ("While a reasonable person of ordinary intelligence might well understand carbon monoxide is a pollutant when it is emitted in an industrial or environmental setting, an ordinary policyholder would not reasonably characterize carbon monoxide emitted from a residential heater which malfunctioned as 'pollution.'").

   In New Mexico the law is clear that the terms of an insurance policy are governed by the understanding of an ordinary layman and not as terms of art understood by sophisticated attorneys.  *Computer Corner*, *supra*, 46 P.3d at 1266.  The Court thus believes the New Mexico Supreme Court would find persuasive the history of this particular pollution exclusion, as it was developed for the purpose of shielding insurers from claims arising out of environmental pollution caused by industrial activity.  Thus, absent extrinsic evidence supporting such a result, the Court

---

[3]*See, e.g., MacKinnon*, 73 P.3d at 1216; *Motorists Mut.*, 926 S.W.2d at 681; *West American Ins. Co. v. Tufco Flooring East, Inc.*, 409 S.E.2d 692, 700 (1991).

does not believe the exclusion would be applied in New Mexico to an incident like this one, in which a substance that happened to be a pollutant was accidentally dropped on Plaintiffs' property as a result of activity that had nothing to do with the creation of the substance.

The fact that the policy specifically defines "soot" as a pollutant does not alter the result. As the Tenth Circuit has noted, a reasonable person could consider the exact same substance a pollutant when it is "emitted in an industrial or environmental setting" but not in a different setting. *Regional Bank, supra*, 35 F.3d at 498. The soot in this case was originally created by a fire, not an industrial process; it was then "dispersed" by an unintentional act or acts that may or may not have been negligent but clearly had nothing to do with an industrial process. It is entirely possible, if not likely, that a reasonable insured would not think this type of dispersal of soot was excluded by the pollution exclusion contained in the policy. The Court therefore finds the New Mexico Supreme Court would determine the exclusion is ambiguous, at minimum, if not explicitly limited to industrial or environmental pollution. Summary judgment in favor of Travelers is not appropriate on the issue of applying the exclusion to the facts of this case.

**Exclusion for Defective Workmanship:** Travelers' final argument is based on the policy's exclusion of loss or damage caused by or resulting from "Faulty, inadequate, or defective: ... (2) ... workmanship, repair, construction, renovation, [or] remodeling...." [Complaint, Exh. D, p. 18] Travelers points out that Plaintiffs allege either Defendant John Bungay or Defendant Right Way Roofing, or both, acted negligently and caused the soot and other burned material to fall on their property. Travelers "expresses no opinion" as to whether these other Defendants were negligent, but argues (in one brief paragraph, with no citation to authority) that if the other

Defendants were negligent "in re-roofing the warehouse, or not removing the charred insulation when the warehouse was rebuilt, or in installing the skylight," the exclusion applies.

Summary judgment is not appropriate on this issue, for two reasons. First, it is not an undisputed fact that any of the other Defendants acted negligently; both have denied any fault. This argument is therefore premature. Second, even if negligence occurred in rebuilding the warehouse, cutting the skylight or re-roofing the warehouse, it is not clear this exclusion would apply. Travelers is seeking to apply the exclusion not to damage caused to the structure itself, upon which the allegedly faulty work was performed, but to damage caused to other property located inside the structure. Due to Travelers' failure to cite even one case construing this exclusion or similar exclusions, the Court has not extensively researched the issue; however, even a brief search has revealed at least one line of cases holding that this type of provision applies only to exclude damage to the structure upon which the faulty work was performed, and not to consequential damages caused to other property by the faulty work. *See, e.g., Schultz v. Erie Ins. Group*, 754 N.E.2d 971, 975 (Ind. Ct. App. 2001) (commercial general liability policy, containing exclusion similar to Travelers' exclusion in this case, does not cover expenditures required "to correct, repair or replace" a builder's own work on a structure; however, it does cover damages to persons or property other than the structure, caused by the builder's faulty workmanship).[4] At

---

[4]This possible construction of the exclusion is bolstered by the language of the policy provision itself. The exclusion, while stating that Travelers will not pay for loss or damage caused by or resulting from faulty workmanship, etc., then states that Travelers will pay if the faulty workmanship "results in a "Covered Cause of Loss." [Complaint, Exh. D, p. 18, par. 3] As the Court understands it, this appears to mean that if a defect in repairs or construction causes a non-excluded loss to property, that loss will be covered, and appears to refer to property other than the structure upon which the defective repairs were performed. Since neither party briefed the significance of this provision, however, the Court need not definitively decide the meaning of the provision at this time.

this point it is not clear whether Travelers' reliance on the exclusion is supportable either factually or legally. Therefore, the Court will not grant summary judgment on this issue.

**Bad Faith Claim:** Travelers contends that even if summary judgment is not granted as to Plaintiffs' underlying claim of coverage, Plaintiffs have failed to raise an issue of fact as to their bad-faith-failure-to-pay claim. In New Mexico, a failure to pay a first-party claim such as this one constitutes bad faith if the refusal to pay was frivolous or unfounded. *See* NMRA13-1702. Travelers' refusal to pay the claim was based on its assertion that one of the exclusions discussed above applies. At this point, given the dramatic splits of authority in other jurisdictions construing both the contamination exclusion and the pollution exclusion, as well as the lack of New Mexico law addressing either one, it is difficult to conclude that Travelers' reliance on those exclusions was frivolous.[5] However, as discussed above, further factual development is needed to determine whether the claimed exclusions apply to the facts in this case. That factual development may shed some light on the reasons for Travelers' reliance on the exclusions in denying Plaintiffs' claim. Therefore, in an abundance of caution, the Court will exercise its discretion and deny Travelers' motion for summary judgment on Plaintiffs' bad-faith-refusal-to-pay claim. *See* 10B Wright, Miller & Kane, *Federal Practice and Procedure:Civil* § 2737, at 319 (court has discretion to

---

[5]Plaintiffs argue that coverage was clearly provided by the policy, because fire and smoke are both "specified causes of loss" under the policy and the damage to their property was undeniably a result of fire and smoke. Therefore, Plaintiffs claim, there was no valid reason for Travelers to deny coverage. As discussed below, however, the fact that fire and smoke are listed as specified causes of loss does not automatically provide coverage; instead, the existence of a specified cause of loss may under some circumstances constitute an exception to an exclusion. For this reason, the issue of whether an exclusion applies is still the main question in this case, and the mere fact that fire and smoke are specified causes of loss does not establish bad faith on the part of Travelers.

decline to enter partial summary judgment if it would not materially expedite the adjudicative process).

**Plaintiffs' Motion for Summary Judgment:**  Plaintiffs' argument is deceptively simple. They point to the fact that the experts' reports indicate the material that fell on their property was soot and smoke, which came from the mid-1990s fire. They also point out that fire and smoke are "specified causes of loss" under the insurance policy. [Complaint, Exh. D, p. 27]  Therefore, they contend there was no basis for Travelers to deny their claim. In essence, Plaintiffs' argument can be distilled to an argument that if a specified cause of loss is involved in damaging an insured's property, a claim for such damage is automatically covered. The Court does not agree that the issue is so simple.

There is nothing in the policy stating that any damage resulting from a specified cause of loss will automatically be covered.[6] Instead, the concept of a specified cause of loss comes into play only when there is an issue as to whether a limitation or an exclusion applies. Other than the definition section of the policy, the only places the phrase "specified cause of loss" appears in the policy are in the limitations and exclusions sections. [Complaint, Exh. D, p. 10 par. 6.j; p. 16 pars. i, 2.a; p. 17 par. 2.d, 2.k]  In each appearance, the phrase acts as an exception to a limitation or exclusion; for example, in paragraph 2.k, the policy excludes losses caused by the discharge, dispersal, release or escape of pollutants, except as follows: "... unless the release, discharge or

---

[6]The "specified cause of loss" phrase must be distinguished from a "Covered Cause of Loss" as stated in the policy. A covered cause of loss is essentially any risk of direct physical loss unless the loss is either limited or excluded by the remainder of the policy, and the insurer will pay for any covered cause of loss. [Complaint, Exh. D, p. 3, par. 4]  Thus, if fire and smoke had been listed as "covered" causes of loss in the definitions rather than as "specified" causes of loss, Plaintiffs' automatic-coverage argument might have merit.

13

dispersal is itself caused by any of the 'specified causes of loss.' But if the discharge ... of 'pollutants' results in a 'specified cause of loss', we will pay for the loss or damage caused by that 'specified cause of loss'." In other words, a specified cause of loss will not automatically provide coverage for a loss, but under certain circumstances it may provide an exception to the pollution exclusion.

The next question is whether there are undisputed facts in this case that create a situation in which fire and smoke, the specified causes of loss relied on by Plaintiffs, provide exceptions to application of the contamination or pollution exclusions as a matter of law. If so, Plaintiffs' motion for summary judgment should be granted. With respect to the pollution exclusion, set out above, the undisputed facts must be such that the fire and smoke caused the release, discharge or dispersal of the soot and other burnt material onto Plaintiffs' property. In the alternative, the discharge of the soot and other burnt material must have resulted in fire and smoke. Plaintiffs argue that of course the fire and smoke caused the damage; according to Plaintiffs, every expert expressing an opinion on the subject agrees the fire in the 1990s created the burnt insulation, from which the soot and other burnt material eventually fell. The question under the policy's language, however, is not what event created the soot; it is what event released, discharged or dispersed it. Under one view of the facts, the 1990s fire burned the insulation but the insulation, containing the soot and other burnt material, remained in place for many years. It was not until the roofing work was performed and the skylight cut that the fire debris was released from its original location and fell onto Plaintiffs' property. Similarly, the falling of the debris did not result in a fire, and there is

a question of fact as to whether it resulted in smoke that caused damage to Plaintiffs' property.[7] It is not appropriate to decide, at the summary-judgment stage, that Plaintiffs' specified-cause-of-loss argument precludes application of the pollution exclusion.

Similarly, the specified-cause-of-loss issue does not as a matter of law vitiate the contamination exclusion. That exclusion (paragraph 2.d on page 17 of the policy) requires that the contamination have resulted in a specified cause of loss. In other words, the claimed contamination of Plaintiffs' property by the soot and other burnt material must have resulted in a fire or smoke. Clearly no fire resulted from the falling of the fire debris onto the property. Furthermore, the contamination, assuming there was any, did not occur until the debris landed on the property, so the contamination also did not result in any smoke.[8] Summary judgment is therefore not appropriate with respect to the impact of the specified-cause-of-loss argument on the contamination exclusion.

For the foregoing reasons, the fact that fire and smoke are specified causes of loss does not automatically provide coverage for the losses suffered by Plaintiffs in this case. Furthermore, issues of fact preclude summary judgment on the issue of whether the specified-causes-of-loss

---

[7]Plaintiff Davidson testified that while the roofing work was performed and the skylight was being cut, the warehouse smelled and was hazy for a few days, and it looked like smoke to him. [Davidson depo. pp. 167-68] However, the experts' reports indicate the substance found on Plaintiffs' property was "charred wood fibers" and "soot-like particles," and it is not clear from the reports whether some or all of this debris should be considered "smoke" or simply fire debris. [Pltfs. Resp. to Travelers MSJ, unlabeled exhibits 3, 4] There are issues of fact, therefore, as to whether smoke resulted from the release of the soot and other burnt material, as to whether the smoke affected Plaintiffs' property at all, and therefore as to whether the smoke was a basis for Plaintiffs' insurance claim.

[8]While it may be possible that smoke resulted in the contamination, the reverse is not true.

15

argument affects either the contamination or pollution exclusion. Plaintiffs' motion for summary judgment must be denied.

## **CONCLUSION**

Based on the foregoing, the Court finds that under New Mexico law, both the contamination exclusion and the pollution exclusion are ambiguous, and further evidence is necessary to decide whether they apply to the facts of this case. Furthermore, there are issues of fact as to whether the cause of the loss was faulty or defective workmanship, repair or construction, and there is an issue of law as to whether the exclusion for such workmanship even applies to Plaintiffs' loss. Finally, the fact that fire and smoke are specified causes of loss under the policy does not entitle Plaintiffs to automatic coverage for their losses. For these reasons, both parties' motions for summary judgment will be denied.

## **ORDER**

A Memorandum Opinion having been entered this date, it is hereby ORDERED that the motions for summary judgment filed by Defendant Travelers (Doc. 149) and Plaintiffs (Doc. 225) be, and hereby are, DENIED.

Dated this 31st day of May, 2007.

_____
BRUCE D. BLACK
United States District Judge