IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

RONALD DAVIDSON, MARY DAVIDSON,
GREGORY DAVIDSON, and BILL BROWN,

    Plaintiffs,

v.                                                   Civ. No. 05-0005 BB/ACT

ST. PAUL/TRAVELERS INSURANCE CO., JOHN
AND BARBARA BUNGAY, RIGHT WAY ROOFING,
INC., SABANA ROSE, INC., RUTH WEAVER, and
NORFOLK & WHEI CORP.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court for consideration of a motion for summary judgment (Doc. 224) and a motion to bifurcate (Doc. 128) filed by Defendant Right Way Roofing ("Defendant"). Having reviewed the submissions of the parties and the relevant law, the Court finds that Defendant's motion for summary judgment should be GRANTED, and the motion to bifurcate should be DENIED as moot.

This action arises out of an incident in which inventory owned by one or more of the Plaintiffs, and located in a warehouse owned by Defendants John and Barbara Bungay, was allegedly damaged. In the mid-1990s, several years before Plaintiffs began storing their inventory in the warehouse, much of the warehouse had been destroyed by a fire. The warehouse was rebuilt after the fire, and the portion of the warehouse that had not been destroyed was incorporated into the newly-built structure. Plaintiff Ronald Davidson sub-leased two separate portions of the warehouse and Plaintiffs used the sub-leased areas to store a large number of collectibles such as posters, action figures, and CDs, which they intended to sell. None of the Plaintiffs experienced any problems with either sub-leased area until late April or early May

2004, after a hole was cut in the roof in order to install a skylight while, at the same time, Defendant was performing roofing work. Plaintiffs allege that either the cutting of the skylight or vibrations caused by the roofing work, or both, caused soot and/or other burned material to fall from the ceiling and settle on their collectibles, damaging them. The claimed source of this soot and/or burned material was insulation that had been burned in the mid-1990s fire but had been left in place instead of being removed during the reconstruction of the warehouse. Remnants of the burned insulation allegedly fell onto the collectibles that were stored in the upper level of the warehouse. Plaintiffs maintain the soot and/or burned material is hazardous and it is impossible to safely clean the collectibles.

Plaintiffs filed suit against a number of Defendants. Plaintiffs have raised only one claim against this particular Defendant, a claim of negligence. Defendant has moved for summary judgment on that claim.

**Standard of Review**

Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986). To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the

evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

**Discussion**

Plaintiffs have presented no evidence indicating Defendant had anything to do with the reconstruction of the warehouse following the 1990s fire. Instead, Plaintiffs' claim against Defendant is based on their assertion that Defendant, in the exercise of ordinary care, should have known the roofing work would cause vibrations, should have known these vibrations could cause harm to the contents of the warehouse, and should have either warned Plaintiffs of this potential or taken other action to prevent the harm from occurring.[1] Defendant's primary argument in opposition to Plaintiffs' claim is that Plaintiffs have failed to establish, with an expert's opinion, a standard of care for roofers. According to Defendant, absent such expert testimony concerning the standard of care Plaintiffs' negligence claim fails as a matter of law.

Defendant's argument compares the trade of roofing to professions such as the practice of medicine or law. Defendant points out that a person practicing a trade is required to use the skill and knowledge of a reasonable person skilled in such work. *See Garcia v. Color Tile Distributing Co.*, 408 P.2d 145, 148 (N.M. 1965). Since this standard is similar to the standard applied to professionals, and expert testimony is usually required to establish a malpractice or negligence claim against a professional, Defendant reasons that expert testimony is also required

---

[1] Plaintiffs originally alleged that Defendant was involved in cutting the hole for the skylight, in addition to simply performing the roofing, but Plaintiff Ronald Davidson retracted that allegation during his deposition and Plaintiffs have not provided any evidence to support it. [MSJ, Exh. D, Ronald Davidson depo. pp. 212, 275-76] Plaintiffs did argue, in opposing summary judgment, that there is evidence Defendant was involved in installing the skylight. The only evidence to this effect, however, is Defendant Bungay's deposition testimony that Defendant "ultimately set the skylight on permanently." [MSJ Resp., unmarked Exh. 2, p. 73] The only reasonable interpretation of this testimony is that Defendant set the skylight over the hole and sealed it, which is not the same as cutting a hole through the roof.

in this case. The Court disagrees with this argument. It should be noted there is no indication in the *Garcia* opinion that expert testimony was presented or required in that case to establish a violation of the applicable standard of care. Furthermore, New Mexico's cases have expressly distinguished professional-negligence cases from trade-negligence cases. In the former types of cases, the requirement of expert testimony is the rule and the ability to prove negligence without such testimony is the exception; in the latter, the opposite is true. *Compare Adobe Masters, Inc. v. Downey*, 883 P.2d 133, 135 (N.M. 1994) (in case involving architect, court states that expert testimony is necessary concerning professional standards of a person in that field, unless the particular actions were breaches of duty within a layperson's common knowledge), *with Cumming v. Nielson's, Inc.*, 769 P.2d 732, 735 (N.M. App. 1988) (in road contractor case, pointing out that absent special circumstances expert testimony is not required to prove breach of duty); *see also Hoang v. Arbess*, 80 P.3d 863, 870 (Colo. App. 2003) (expert witness testimony not necessary to establish builder's standard of care); *Earl v. Leiffer Const., Inc.*, 2001 WL 991530 (Ohio App., unpublished) (no expert testimony needed in lawsuit against company repairing roof and chimney). The acts of negligence alleged against Defendant are not so extraordinary as to remove them from the standard rule, that expert testimony is not required to establish a standard of care for a trade or the breach of such a standard. Thus, Plaintiffs' lack of an expert witness is not fatal to their claim of negligence against Defendant.

Despite the failure of Defendant's expert-witness argument, however, Defendant is still entitled to summary judgment. Even though expert testimony is not required to establish that Defendant was negligent, there must be some evidence that Defendant breached the standard of care of a reasonably skilled roofer. For purposes of this motion, the Court will assume that Defendant's roofers, while working on the roof (including setting the skylight on permanently), did cause vibration and that this vibration caused soot and other burnt material to fall from the

ceiling onto Plaintiffs' property.  However, this cause-and-effect relationship is not sufficient to allow imposition of liability on Defendant for its actions; to do so would be tantamount to imposing a strict-liability standard upon Defendant's roofing activities.  Instead, there must be some evidence that Defendant knew or should have known that its activities on the roof could cause the type of harm suffered by Plaintiffs.  No such evidence has been presented to the Court in this case.

The Court notes, first of all, there is no evidence Defendant knew anything about the reconstruction of the warehouse after the 1990s fire, or knew that a portion of the warehouse that was still standing had been incorporated into that reconstruction.  In addition, there is no evidence that any owner or employee of Defendant knew the burnt insulation was present in the ceiling, or that vibrating the roof could somehow cause debris to fall from that insulation.[2]  The only piece of evidence Plaintiffs have presented concerning Defendant's knowledge of a possibility of harm is a "warning" that Defendant is apparently in the practice of giving to its customers prior to performing roofing work.[3]  This warning, contained in a document that has not even been clearly identified, much less provided to the Court, apparently informs roofing customers to "remove all wall hangings, chandeliers, pictures or other valuables that might come

---

[2]Plaintiffs argue that Defendant had to know the insulation was burnt, because one tenant of the warehouse stated in her deposition that the burned insulation was "extremely apparent." [Bungay MSJ (Doc. 221), Exh. C, Weaver depo. p. 36] However, Plaintiffs presented no evidence that any officer or employee of Defendant was ever inside the warehouse, in a position to see the burnt insulation.  More importantly, there is no evidence that any officer or employee had been notified or otherwise knew the burnt insulation, even if it had been seen, was prone to shedding soot or other fire debris.

[3]The qualifier "apparently" is used because the evidence in this case is that Defendant Bungay was not given the document containing the warning, or at least did not see the warning if he was given the document. [Reply, unmarked Exh. A, Bungay depo. pp. 87-89] Even without such knowledge on Bungay's part, however, the warning is relevant to prove what Defendant knew before it began the roofing work on the warehouse.

loose during our time on your roof..." [Reply, unmarked Exh. A, Bungay depo. p. 87]  A reasonable inference to draw from this warning is that Defendant knew there was a possibility that vibration from the roofing work could cause articles hung on the wall or ceiling to work loose and fall.  This is not the same thing, however, as knowing there is a good possibility that a large amount of debris will be knocked loose from the ceiling simply because roofers are walking and working on the roof.

If this was a case in which a chandelier or other hanging item, rather than part of the ceiling itself, had been knocked loose by vibration, the warning quoted above might be sufficient evidence that Defendant was aware of the possibility of such an occurrence and perhaps should have taken steps to prevent it, such as making sure the customer knew of the possibility. However, this case involves no such hanging object and Plaintiffs have presented no evidence indicating that Defendant was put on notice that performing roofing work on a commercial warehouse could result in the type of harm that occurred here.  *See Cramer v. Dalton Roofing Service, Inc.*, 2004 WL 238761 (Mich. App. unpublished) (knowledge that roofing work causes vibration did not make personal injury caused by disintegrating chandelier foreseeable).  For example, there is no evidence that ceiling debris being knocked loose is a common occurrence during roofing activity, either commercial or residential.  There is also no evidence that Defendant was made aware of the specific circumstances of this particular warehouse, and of the potential for harm presented by the burnt insulation.  Absent such evidence, there is no reason a reasonably skilled roofer would have taken any precautions to prevent debris from falling onto the contents of the warehouse.  *Cf. Gourdi v. Berkelo,* 930 P.2d 812, 816 (N.M. 1996) (where landlord had no knowledge of any prior accidents or any other fact that would have put the landlord on notice of the existence of a dangerous condition, landlord could not be charged with

knowledge of any dangerous condition that would have been revealed by a reasonable inspection; landlord had no duty to perform such inspection after commencement of lease).

Plaintiffs contend that Defendant should have inspected the ceiling of the warehouse prior to beginning the roofing work. They also contend that if Defendant had done so, the burn damage to the insulation would have been evident. Again, however, there is no evidence that Defendant had any reason to inspect the interior of the commercial warehouse to attempt to discover potential dangers that might arise from the roofing work. Plaintiffs have adduced no evidence that roofing work commonly, or even occasionally, causes debris to fall from ceilings. Plaintiffs would impose an absolute rule on all roofers that they must inspect the interior of any structure before beginning to work on the roof of the structure. Such an absolute rule is not reasonable, in the absence of evidence that without such an inspection damage similar to that suffered in this case can ordinarily be expected to result.[4]  *Cf. id.* (refusing to impose absolute duty on landlords to reenter property and inspect for dangerous condition, absent facts warranting such requirement). Again, Defendant's duty of care was not to act as an insurer preventing all possible harm that might result from its roofing work. Instead, its duty was to act with the care that a reasonably skilled roofer would employ. *See Garcia, supra*, 408 P.2d at 148. The Court finds as a matter of law that, in the absence of facts putting a roofer on notice of potential problems arising out of its work, the roofer does not have a duty to inspect the interior of a commercial warehouse prior to performing its work on the roof of the warehouse. *See Requarth v. Brophy,* 801 P.2d 121, 123 (N.M. App. 1990) (existence of a duty is a question of law for the courts to decide).

---

[4]The fact that damage did apparently result in this case does not change the result. As far as the Court can tell, and no evidence to the contrary has been presented, this case involves an extraordinary situation rather than a relatively common one.

**Conclusion**

No evidence has been presented to the Court indicating that Defendant had any knowledge of the existence of the burnt insulation, or of the risk that the burnt insulation would shed soot and other debris if roofing work was performed on the warehouse.  Furthermore, Defendant had no duty to inspect the interior ceiling of the warehouse prior to performing the roofing work, to determine whether working on the roof might cause the ceiling to shed debris.  Therefore, Defendant is entitled to summary judgment and dismissal from this case.  As a result of this ruling, Defendant's motion to bifurcate the claim against it from the claims against the other Defendants is moot and will be denied.

**ORDER**

A Memorandum Opinion having been entered this date, it is hereby ORDERED that the motion for summary judgment filed by Defendant Right Way Roofing (Doc. 224) be, and hereby is, GRANTED; and that the motion to bifurcate filed by the same Defendant (Doc. 128) be, and hereby is, DENIED as moot.

Dated this 8th day of June, 2007.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE