IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

RONALD DAVIDSON, MARY DAVIDSON,
GREGORY DAVIDSON, and BILL BROWN,

    Plaintiffs,

v.                                                                                              Civ. No. 05-0005 BB/ACT

ST. PAUL/TRAVELERS INSURANCE CO., JOHN
AND BARBARA BUNGAY, RIGHT WAY ROOFING,
INC., SABANA ROSE, INC., RUTH WEAVER, and
NORFOLK & WHEI CORP.,

    Defendants.

### MEMORANDUM OPINION AND ORDER

        This matter is before the Court for consideration of a motion for summary judgment (Doc. 221) and a motion for partial summary judgment concerning damages (Doc. 222) filed by Defendants John and Barbara Bungay. Having reviewed the submissions of the parties and the relevant law, the Court finds that the Bungays' motion for summary judgment should be granted in part and denied in part, and the motion for partial summary should be denied with leave to renew the damages argument at trial.

        This action arises out of an incident in which inventory owned by one or more of the Plaintiffs, and located in a warehouse owned by the Bungays, was allegedly damaged. In the mid-1990s, several years before Plaintiffs began storing their inventory in the warehouse, much of the warehouse had been destroyed by a fire. The warehouse was rebuilt after the fire, and the portion of the warehouse that had not been destroyed was incorporated into the newly-built structure. Plaintiff Ronald Davidson sub-leased two separate portions of the warehouse and Plaintiffs used the sub-leased areas to store a large number of collectibles such as posters, action figures, and CDs, which they intended to sell. None of the Plaintiffs experienced any problems

with either sub-leased area until late April or early May 2004, after a hole was cut in the roof in order to install a skylight while, at the same time, new roofing material was being installed on the roof.  Plaintiffs allege that either the cutting of the skylight or vibrations caused by the roofing work, or both, caused soot and/or other burned material to fall from the ceiling and settle on their collectibles.  The claimed source of this soot and/or burned material was insulation that had been burned in the mid-1990s fire but had been left in place instead of being removed during the reconstruction of the warehouse.  Remnants of the burned insulation allegedly fell onto the collectibles that were stored in the upper level of the warehouse.  Plaintiffs maintain the soot and/or burned material is hazardous and it is impossible to safely clean the collectibles.

Plaintiffs filed suit against a number of Defendants.  Plaintiffs have raised three claims against the Bungays:  a claim of negligence, a claim of fraud or misrepresentation, and a request for injunctive relief.  The Bungays have moved for summary judgment on all claims, and also request summary judgment as to Plaintiffs' claims for punitive damages and attorney's fees.  In addition, the Bungays filed a motion for partial summary judgment, maintaining that Plaintiffs have provided insufficient evidence to support the damages they have requested in this case.  All of the other Defendants, except those who have not yet entered an appearance, have joined in this motion for partial summary judgment.

**Standard of Review**

Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Medina v. Income Support Div.*,  413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).  In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S.

574, 587-88 (1986).  To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case.  *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

**Discussion**

**Claim of Fraud or Misrepresentation:**  Plaintiffs' claim of fraud or misrepresentation is brought under New Mexico state law.  In New Mexico the elements of such a claim are as follows: (1) a representation of fact was made which was not true; (2)  either the falsity of the representation was known to the party making it or the representation was recklessly made; (3) the representation was made with the intent to deceive and to induce the party claiming fraud to rely on the representation; and (4) the party claiming fraud did in fact rely on the representation. NMRA, Civ. UJI 13-1633.  Each of these elements must be proved by clear and convincing evidence.  *Id.*  Plaintiffs' claim is based on their assertion that the Bungays fraudulently induced them to enter into sub-leases for the two areas of the warehouse by failing to disclose the fact of the prior fire and the existence of the burnt insulation.

At the outset, summary judgment will be granted to Barbara Bungay on this claim, as there is no evidence in the record that Barbara ever had any conversation or communication with any Plaintiff.  Without such a communication, Barbara could not have made any false representation of fact to Plaintiffs, which is the first element of a claim for fraud or misrepresentation.

Plaintiffs have produced some evidence indicating John Bungay had a conversation with Plaintiff Ronald Davidson before Davidson, on behalf of an entity named T & T Management,

entered into the sub-lease for a portion of the upper level of the warehouse. [MSJ, Exh. A, Davidson depo. p. 46][1] However, there is no evidence that this conversation had anything to do with the condition of the warehouse, or that John Bungay made any statements during this conversation that might have misled Davidson about the condition of the warehouse. Instead, according to the evidence submitted to the Court the conversation appears to have been strictly about money and the fact that the rental payments under the sub-lease should be made directly to Bungay rather than to the sub-lessor. [*Id.*, pp. 46-47] Since there is no evidence that Davidson asked any questions about the condition of the warehouse or possible problems with the warehouse, or that John Bungay made any statements on either subject, Plaintiffs have failed to establish that any false representations were made to induce Davidson to enter into the sublease.

      Plaintiffs make two arguments in an effort to avoid this result. First, they argue the Bungays acted in concert with Will Ferguson, who is a friend of John Bungay as well as a representative of Norfolk & Whei Corporation, a Defendant in this case. However, the Court has already granted summary judgment to Norfolk & Whei on the fraud or misrepresentation claim, because Plaintiffs did not adduce sufficient evidence to support that claim. The friendship between Ferguson and Bungay, standing alone, establishes nothing of legal significance concerning the claim that they somehow colluded during the sub-leasing transactions. Furthermore, even if Ferguson's actions could somehow be imputed to the Bungays, those actions do not support a claim for fraud or misrepresentation, for the reasons stated in the opinion granting summary judgment to Norfolk & Whei.

      Plaintiffs' second argument is that John Bungay should have affirmatively disclosed the existence of the prior fire and the burnt insulation during the sub-lease negotiations, and that his

---

[1] The Court recognizes the Bungays' argument that T & T Management was the actual sub-lessee, rather than any of the Plaintiffs. As is discussed in more detail below, it is not necessary to resolve that issue for purposes of this opinion.

silence constituted a false representation. Although Plaintiffs cited no authority supporting this proposition, it appears that silence can be considered a "representation" for purposes of a fraud claim, if the person remaining silent had a duty to speak. *See, e.g., Artilla Cove Resort, Inc. v. Hartley,* 72 S.W.3d 291, 298 (Mo.App. 2002) (affirmative representation is not necessarily required for actionable fraud to exist; silence or concealment of facts can amount to misrepresentation if the silent party has a duty to speak). The duty to disclose information may arise where one party has superior information not reasonably available to the other party. *See id.* In this case, therefore, if there was any evidence that John Bungay knew the burnt insulation was likely to cause problems for Plaintiffs, yet failed to disclose that fact to Davidson prior to the sub-leases, the fraud or misrepresentation claim might survive the motion for summary judgment.

The only evidence presented during the summary-judgment proceedings is to the effect that John Bungay had no information indicating any prior incidents with the burnt insulation had occurred, did not believe the burnt insulation posed any sort of risk for any tenant, and still does not believe that. [MSJ, Exh. 3, John Bungay affidavit; Exh. 5, John Bungay depo., p. 108; Resp. to MSJ, unmarked Exh. 1, John Bungay depo. pp. 69-70]  Therefore, John Bungay did not have superior information of a defect in the warehouse--the mere knowledge that a fire had occurred and the warehouse had been reconstructed is not the same as knowledge that the reconstruction had created a potential problem. *See Harris v. Sloan*, 405 S.E.2d 68, 70 (Ga. App. 1991) (mere knowledge of a repair does not confer knowledge of problems that may result therefrom). [2] Absent knowledge of the defect in the building, there was no duty to disclose such a defect, and

---

[2] As discussed below, the Bungays may have had a duty to reasonably inspect the warehouse prior to leasing it to tenants. However, this duty to inspect, and possibly discover the problem the burnt insulation posed under certain circumstances, cannot be equated with actual knowledge of a defect in the building.

John Bungay's silence on the subject cannot be construed as a false representation.  Again, therefore, as is the case with Barbara Bungay, Plaintiffs have failed to adduce evidence of the first and most important element of the fraud or misrepresentation claim--the fact that a false representation was made.  Summary judgment must therefore be granted on that claim as to John Bungay.

      **Claim of Negligence:**  The Court's disposition of this claim has been hampered by the dearth of legal authority cited in the parties' briefs.  The brief in chief cites one case, a causation case; Plaintiffs cited no case at all in response; and the reply brief also cites one case, setting out the general elements of a negligence case.  After reviewing the attachments to all of the motions for summary judgment filed in this case, as well as the applicable law, the Court finds the crucial issue with respect to the negligence claim is the nature of the relationship between the parties.  The Bungays, as owners of the warehouse, were landlords; Plaintiffs, who stored their collectibles in the warehouse, did so as either sub-tenants or as guests of a sub-tenant.[3]  Under the common law, the Bungays owed the same duty to Plaintiffs as they did to their tenant. *See, e.g., Shump v. First Continental-Robinwood Assoc.*, 644 N.E.2d 291, 296 (Ohio 1994) (landlord owes same duty to social guests of a tenant as to tenant himself); *Stanley v. Town Square Coop*, 512 N.W.2d 51, 54 (Mich. App. 1994) (same, for social guest or business invitee); *cf. Gourdi v. Berkelo*, 930 P.2d 812, 814 (N.M. 1996) (discussing landlord's duty toward employee of tenant, and implicitly equating the two); *Scoggins v. Jude,* 419 A.2d 999, 1001-02 (D.C. App. 1980) (upholding jury verdicts for property damage and personal injuries in favor of tenant and tenant's

---

      [3]An entity named T & T Management was the nominal sub-lessee of the upstairs portion of the warehouse.  However, there is evidence Ronald Davidson dealt directly with John Bungay in entering into the sub-lease, and then paid the rent directly to Mr. Bungay rather than to the sub-lessor.  [MSJ, Exh. A, Davidson depo. pp. 46-47; MPSJ (Doc. 222), Exh. B, Davidson depo. pp. 53-55]  Again, for the reasons discussed in this section, it is not necessary to attempt to determine whether Ronald Davidson should be considered a true sub-lessee, or a lessee, or simply a person using the warehouse space with the permission of T & T Management.

guest, based on landlord's negligence, where ceiling fell in and landlord had notice of cracks in ceiling).

In New Mexico, a landlord has a duty prior to leasing the premises to remedy any dangerous condition that a reasonable inspection of the premises would have revealed. *See Gourdi, supra*. The *Gourdi* case is in line with cases from a number of other jurisdictions imposing an inspection requirement upon landlords. *See, e.g., Youngblood v. Pasadena at Pembroke Lakes South, Ltd.*, 882 So.2d 1097, 1098 (Fla. App. 2004) (landlord has duty to reasonably inspect residential premises prior to possession by tenant). In addition, it is black-letter law that a landlord has a duty to exercise reasonable care, including the duty of reasonable inspection, to prevent dangerous conditions from arising in areas of the premises which remain under the landlord's control during the tenancy.[4] *See* 52 C.J.S. *Landlord & Tenant*, § 423(4), pp. 167-68 (1968) (landlord will be liable for negligence with respect to parts of property over which landlord retains control; landlord has obligation of reasonable care, and is not liable if defective condition was not discoverable by reasonable inspection); Restatement (Second) of Property, Landlord and Tenant § 17.3 (1977). In other words, a property owner has a general duty to be on the lookout for dangerous conditions, although there is no duty to conduct continuous inspections to prevent the development of dangerous conditions. *See Lovato v. Plateau, Inc.,* 444 P.2d 613, 617 (N.M. App. 1968); *Brown v. United States*, 122 F.Supp. 166, 168 (D.N.M. 1954).

While the *Gourdi* case addresses the landlord's duty in the context of a physical injury rather than damage to personal property, other states have applied similar rules to the personal-property situation. *See* 52 C.J.S. § 423(4), *supra*; *Keller-Loup Const. Co. v. Gerstner,* 476 P.2d

---

[4] It can be inferred, at least for purposes of summary judgment, that the warehouse ceiling remained under the Bungays' control in this case, since there is no evidence that the Bungays sought any tenant's permission prior to having the skylight cut through the roof or the roofing work done.

272, 274 (Colo.App. 1970) (landlord held liable for damage to tenant's property, where landlord failed to inspect and repair defective water pipe after being notified of potential problem); Restatement (Second), *supra*, Introductory Note, p. 154 (phrase "physical harm" includes harm to property, for purposes of Restatement rules concerning landlord's tort liability).  The Court therefore finds New Mexico would apply the same duty of reasonable inspection regardless of whether the damage involved is physical injury or harm to personal property.

      The question in this case, then, is whether there is evidence that a reasonable inspection would have shown the burnt insulation posed a risk to personal property stored in the warehouse underneath that burnt insulation.  This is a close call.  On the one hand, as discussed above, there is no evidence that any prior tenant or sub-tenant complained about the burnt insulation, and there is also no evidence that large amounts of soot or other burnt materials had fallen from the ceiling prior to the incident leading to this lawsuit.  In addition, John Bungay testified that he was within a few inches of the burnt insulation when he changed a garage-door motor, and did not notice any problem with the insulation (although he did notice that it was black or gray in color).  [Resp., unmarked Exh. 1, Bungay depo. pp. 57-58, 62-63]  Mr. Bungay also testified that city building inspectors were in the building often while the warehouse was being reconstructed, and "there was no reason to believe that it would or could create a problem."  [*Id.* p. 70]  However, Defendant Weaver testified the burnt insulation was "extremely apparent" and "very visible" to anyone who spent any time in the warehouse.  [MSJ, Exh. C, Weaver depo. p. 36]  She also stated the burnt insulation covered a substantial area of the ceiling, not just a small portion.  [*Id.*]  Finally, she allegedly told an adjuster for Defendant St. Paul/Travelers that she had seen material falling from the ceiling even before the roofing work was performed, when it rained or the wind

blew. [Resp. to St. Paul/Travelers MSJ, unmarked Exh. 8, Burress depo. p. 157][5] Viewing the evidence in the light most favorable to Plaintiffs, the Court finds there is a genuine issue of fact as to whether a reasonable inspection would have revealed that the burnt insulation posed a risk of flaking, dropping, or otherwise shedding soot and other burnt materials.[6] Therefore, the Court will deny the Bungays' motion for summary judgment on the negligence claim.

**Punitive Damages:**  The Bungays argue there is insufficient evidence to allow Plaintiffs' request for punitive damages to proceed to trial.  While the Court agrees the case for an award of punitive damages appears extremely weak at this point, the Court also notes the punitive-damages request is completely intertwined with the merits of the negligence claim and it does not appear eliminating punitive damages from the case will expedite the trial in any way.  For that reason, the better approach procedurally is to refrain from dismissing the punitive damages request at this time.  *See* 10B Wright, Miller & Kane, *Federal Practice and Procedure: Civil* § 2737, at 319 (court has discretion to decline to enter partial summary judgment if it would not materially expedite the adjudicative process).  If the evidence at trial supports submission of the

---

[5]This statement to Burress appears to be admissible for purposes of summary judgment, and may be considered by the Court for the same, because Ms. Weaver is a defendant in this case, and her statement might constitute either a statement against her own pecuniary interest or an admission by a party-opponent.  *See* Fed. R. Evid. 801(d)(2), 804(b)(3).  The Court considers this statement only for purposes of ruling on the current motion, and expresses no opinion as to whether Ms. Weaver's deposition testimony would be admissible at trial if Ms. Weaver does not testify in person.

[6]Since the Court finds there is a genuine issue of fact on the basis of the evidence discussed, there is no reason to rely on the opinions expressed by Mr. Skinner, the expert who stated that no one should have been allowed to occupy the premises as long as the burnt insulation remained in place.  Defendants have moved to exclude this opinion, maintaining Mr. Skinner was not qualified to offer it.  It appears to the Court that an evidentiary hearing will be necessary to resolve this question, and the Court has therefore not relied on Mr. Skinner's opinion in making this summary-judgment decision.  The issue of Mr. Skinner's qualifications, along with all of the other motions in limine and motions to exclude filed by the parties, will be addressed before this matter is tried.

case to the jury it is the practice of this Court to permit the parties to present additional evidence on punitive damages if the jury returns a liability verdict.

**Attorney's Fees:**  The Bungays argue there is no contractual or statutory basis for an award of attorney's fees against them, even if Plaintiffs should succeed on their claims.  Plaintiffs did not respond to this argument in their response brief.  The Bungays are correct that in New Mexico, absent a contract or statute creating an entitlement to payment of attorney's fees by the opposing party, each party bears its own fees.  *See N.M. Right to Choose/NARAL v. Johnson*, 986 P.2d 450, 453 (N.M. 1999) (reiterating that New Mexico follows American rule:  absent statutory or other legal authority, parties are responsible for their own attorney fees).  As against the Bungays, therefore, Plaintiffs will not be awarded attorneys' fees even if they are successful on the merits of their negligence claim.

**Partial Summary Judgment on Damages:**  The Bungays, joined by other Defendants ("Defendants"), contend Plaintiffs have failed to produce sufficient evidence to allow submission of any measure of damages except, perhaps, the cost of cleaning the Plaintiffs' collectibles and other property.  Plaintiffs have requested compensation for the damage to their personal property, as well as lost profits due to the inability to sell the collectibles that had been stored in the warehouse.  These elements of damage are distinct and must be addressed separately.

**Damage to Property:**  Defendants correctly point out that in New Mexico, the measure of damages for harm to personal property is the smaller of two amounts:  (1) the difference between the fair market value of the property before the occurrence and the fair market value after the occurrence; or (2) the reasonable cost of repairing the property.  *See* N.M. UJI 13-1816; *Robert E. McKee Gen. Contractor, Inc. v. Ins. Co. of N. America*, 269 F.2d 195, 196 (10th Cir. 1959).  Defendants make two separate arguments in support of their motion.  First, they claim Plaintiffs have not produced evidence that could support an award under the before-and-after

measure of damages. Second, they contend the cost of repairing the property, which will consist of cleaning it, will obviously be less than the millions of dollars of losses claimed by Plaintiffs, so Plaintiffs' damages should be limited to the cost of cleaning.

It is true that Plaintiffs' evidence regarding the amount of personal property allegedly damaged as a result of the ceiling incident, and the value of that property, is somewhat haphazard and is not anywhere close to meeting even the most minimal accounting standards. However, Plaintiffs have submitted lists, prepared in part by a salvage company hired by Defendant St. Paul/Travelers, of collectibles that were located in the warehouse at the time of the occurrence and were allegedly damaged as a result of the occurrence. [Resp., unmarked Exhs. 1, 2; MSJ Exh. B, Ronald Davidson depo., pp. 233-34, 238] These lists include estimates of the "cost" of each collectible as well as the estimated retail value. [*Id.*] The figures were apparently supplied by Ronald Davidson, and there is evidence that he has many years of experience in the field of buying collectibles in bulk and selling them at retail. [Ronald Davidson depo., portions attached as exhibits to various motions, *passim*] In most if not all jurisdictions, including New Mexico, an owner of personal property is allowed to testify as to the value of that property, and such testimony is sufficient to support a jury's determination of that value. *See, e.g., State v. Haar*, 797 P.2d 306, 310 (N.M. App. 1990) (owner of personal property may testify as to the value of that property, and such testimony is sufficient to support a jury's determination of value); *Russell v. Richards*, 702 P.2d 993, 996 (N.M. 1985) (owner is competent to testify about value of personal property); *State v. Landlee*, 516 P.2d 697, 698 (N.M. App. 1973). It therefore appears Plaintiffs have provided sufficient evidence to establish the "before" value of the property stored in the warehouse.

In an effort to avoid this result, Defendants make a number of different arguments that merit only brief discussion. First, they argue strenuously that there is no evidence of the original

cost of the collectibles to Plaintiffs, as there is no documentation of where, when, or for how much the collectibles were acquired, or of the wholesale cost of the items. Such evidence, however, is not necessary to establish a "before" value of the items. It does not matter whether Plaintiffs were given the items, found them on the street, or paid full retail price for them; it is the value of the items at the time of the occurrence, not their original cost to Plaintiffs, that matters.[7]

Defendants also claim there is no complete and accurate inventory of the items stored in the warehouse at the time of the occurrence, and without such an inventory there is insufficient evidence to determine what property was located there. Defendants concede that a partial inventory was performed by the salvage company mentioned above, but discount this inventory because it was done after the occurrence. However, the timing issue appears insignificant. Absent evidence indicating Plaintiffs, after the occurrence and before the inventory, either brought in additional amounts of personal property or removed such property from the warehouse, it can be inferred that the items contained in the salvage company's inventory were present in the warehouse at the time of the occurrence. *See State v. Landlee, supra* 516 P.2d at 698. Defendants' insistence that a full and accurate pre-occurrence inventory is necessary may provide fodder for cross-examination and argument at trial, but it is not a basis for summary judgment.

Defendants point out, several times, that the value evidence in this case would not pass even minimal accounting standards and that there is a complete lack of documentary evidence supporting Plaintiffs' claims. The Court is aware of no case, however, requiring that accounting

---

[7]Of course, the original cost to Plaintiffs is relevant to the value inquiry; however, it is not necessary to that determination. For this reason, Defendants' additional original-cost arguments, such as the contention that the inventory was passed around from Plaintiff to Plaintiff, and store to store, without any evidence the transactions were at arm's length, also fail to justify summary judgment.

standards be met, or documents produced, to justify a property-damage award. Instead, as noted above, an owner of personal property may testify concerning the value of that property, and the owner's testimony is sufficient to allow the jury to make a determination as to value. Such evidence is present in the summary-judgment record, and the Court therefore cannot accept Defendants' argument that the evidence is insufficient to establish a "before" value for the property stored in the warehouse at the time of the occurrence. Defendants are obviously frustrated with Plaintiffs' lack of record-keeping and their completely informal business practices. Again, however, those are matters for cross-examination and argument rather than grounds for summary judgment.

Defendants also argue that, even if there is sufficient evidence to support an award of before-and-after damages, the cost of cleaning the property will obviously be less than the millions of dollars of before-and-after damages claimed by Plaintiffs.[8] This argument might have merit if there was any evidence in the record as to what the cost of cleaning would be. There is evidence in an expert's report that the property can be cleaned with "dry tack sponge cleaning" in a manner sufficient to reduce the level of wood ash and soot particulates to levels consistent with non-contaminated surfaces. According to the expert, following such cleaning the merchandise could safely be distributed to the general public. [Resp. to St. Paul/Travelers MSJ, unmarked Exh. 3, report by Rimkus Consulting, p. 6] However, no party has directed the Court's attention to any evidence in the record indicating how much it would cost to clean Plaintiffs' property.[9]

---

[8]The Court notes that Plaintiff Ronald Davidson testified the collectibles could not be cleaned. [Mot. Partial S.J., Exh. B, Davidson depo. pp. 244-45] However, there is evidence from an expert to the contrary. Since neither party briefed the issue, and it is unnecessary to resolve the issue for purposes of this motion, the Court has not attempted to determine whether lay opinions may contradict those of an expert as to the cleaning question.

[9]Defendants maintain, in their reply brief, that an estimate of $150,000 has been obtained for the cost of cleaning the merchandise. [Reply, p. 15] This assertion was not supported by a citation to the record, and the Court has been unable to locate such evidence in the record.

Without such evidence, it is premature to attempt to limit Plaintiffs' recovery to the cost of cleaning. It is true that at trial, Plaintiffs' damages for harm to their personal property will be limited to the lesser amount of either the cost of cleaning or the diminution in value of the property. However, such a comparison is impossible at this time because there is no evidence as to the cost of cleaning.

**Lost Profits:** Plaintiffs have requested a damages award for profits allegedly lost when they were unable to sell the inventory of collectibles they had stored in the warehouse. This request was not contained in the complaint, but appeared in Plaintiffs' initial disclosures, provided to Defendants in 2005. [Doc. 70] Despite the fact they were given notice of the lost-profits claim, Defendants ask for summary judgment on the basis that lost profits constitute special damages and must be pled in the complaint. Defendants are correct in asserting that in a tort case in the Tenth Circuit, lost profits are special damages that must be pled under Federal Rule of Civil Procedure 9(g). *See Quinones v. Pennsylvania General Ins. Co.,* 804 F.2d 1167, 1170 (10th Cir. 1986). However, Defendants have had ample notice of the claim for lost profits, and this Court may construe Plaintiffs' initial disclosures, as well as the refusal to concede the issue during the summary-judgment briefing, as a request to amend the complaint to plead such damages. *Cf. Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir.2003) (inclusion of new allegations in a response to a motion for summary judgment should be considered a request to amend the complaint). Exercising its discretion, the Court grants Plaintiffs' implied request to amend the complaint to request lost profits as damages.

Defendants also maintain Plaintiffs have failed to adduce sufficient evidence to allow the lost-profits claim to proceed past summary judgment. They point out that Plaintiffs have produced no corporate tax returns for any of the myriad businesses they claim to have operated; have supplied no profit-and-loss statements for the corporations they organized to operate those

businesses; have no accounting records for many of the businesses; have submitted only a few individual tax returns showing annual incomes of approximately $10,000 per year for one or two Plaintiffs for one or two years; and in general have failed to provide any profit-and-loss documentation that could support a projection of lost profits into the future.[10]  Finally, Defendants argue that Plaintiffs' claim they planned to eventually open 50 collectibles stores in various malls is wildly speculative, and as such cannot be the basis for an award of lost profits.

The Court agrees there appears to be a substantial lack of documentation supporting Plaintiffs' requested lost-profits damages.  Again, however, documents are not a prerequisite for an award of damages, if the facts are present.  The lack of documentation should not prevent them from recovering lost profits damages if they can prove they have suffered such damages.  Furthermore, the fact that Plaintiffs' estimate of lost profits may be highly optimistic is a basis for cross-examination, not summary judgment.  *See DeVries v. Starr*, 393 F.2d 9, 20 (10th Cir. 1968) (that plaintiff's estimate of lost profits may have been of arguable validity does not mean lost profits were not established).  "[T]he fact that lost profits may not be computed with exact mathematical certainty does not prevent the plaintiff from submitting the issue to the fact finder." *Ranchers Exploration and Dev. Corp. v. Miles*, 696 P.2d 475, 477 (N.M. 1985).

The Court notes Defendants have apparently been provided records of daily and weekly sales figures generated by the mall stores between December 2004 and October 2005, but did not submit those records to the Court for purposes of ruling on this motion.  Furthermore, there is testimony that as of November 2005, Plaintiff Brown was able to pay himself $400 per week as a salary for operating mall stores in Texas.  [St. Paul/Travelers MSJ, Exh. E, Brown depo. p. 95]  Thus, there is a possibility that lost-profits projections could reasonably be made on the basis of

---

[10] Plaintiff Ronald Davidson admitted there are no W-2 or W-4 forms, payroll records, gross receipts tax records, or state tax returns for the stores operated by Plaintiffs. [Mot. Partial S.J., Exh. B, Davidson depo. p. 252-53]

the sales figures and salaries collected by Plaintiffs, despite Plaintiffs' failures to adhere to any sort of accounting methods. At this point, therefore, the Court will deny the motion for summary judgment. At trial, however, speculative testimony will not support a request for lost profits; the Court will not allow such a request to go to the jury unless it is supported by concrete facts. For example, Plaintiffs will not be able to simply assert that they planned to open 50 new stores, without actual facts supporting such an assertion as well as the profits anticipated from each new store. *See Deaton, Inc. v. Aeroglide Corp.,* 657 P.2d 109, 114 (N.M. 1982) (evidence of lost profits from new business was too speculative to be upheld); *see also Tri-G, Inc. v. Burke, Bosselman & Weaver,* 856 N.E.2d 389, 407 (Ill. 2006) (lost profits must be established with reasonable certainty; evidence of such lost profits is generally considered too speculative where new business is involved; if the evidence is sufficient to support such an award, however, there is no "inviolate" rule that a new business can never prove such damages). In sum, while it is highly possible that a portion of Plaintiffs' lost-profits evidence will be too speculative to be admitted at trial, it is also possible that Plaintiffs will be able to prove some level of lost profits as a result of the interruption of their collectibles business. Summary judgment will therefore not be granted as to this element of damages.

  **Conclusion:** As discussed above, Plaintiffs have failed to adduce sufficient evidence to support a claim for fraud or misrepresentation against either of the Bungays. However, there is enough evidence in the record to warrant submission of the negligence claim to the jury. Furthermore, while there is some likelihood that Plaintiffs' property-damage claim will be limited at trial to the cost of cleaning the collectibles, there are unresolved issues precluding a grant of summary judgment on that point. Finally, as there is a possibility that some level of lost profits can be proven in this case, that element of damages will not be eliminated from the case at this time.

**ORDER**

A Memorandum Opinion having been entered this date, it is hereby ORDERED that the motion for summary judgment filed by Defendants John and Barbara Bungay (Doc. 221) be, and hereby is, GRANTED in part and DENIED in part; and it is also ORDERED that the motion for partial summary judgment filed by the Bungays and joined in by the other Defendants (Doc. 222) be, and hereby is, DENIED.

Dated this 25th day of June, 2007.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE